IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE R. WATSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | NO. 08-1858 |
| COMMISSIONER, | : | |
| Commissioner of Social Security | : | |
| Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**                                                              **February 18, 2009**
**UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Michelle R. Watson ("plaintiff") brought this action through counsel pursuant to 42 U.S.C. § 1383 (c)(3), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  42 U.S.C. § 1381-1383f.

      As more fully set forth herein, I respectfully recommend that this action be REMANDED for further proceedings consistent with this Report and Recommendation.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

      Plaintiff brings this action for child's SSI on behalf of her minor daughter A.H.  A.H. was born on August 25, 1993.  (R. 29, 278).  At the time of her February 22, 2007 hearing before Administrative Law Judge Reana Sweeney, plaintiff was in the eighth grade. (R. 279).

      Plaintiff applied for Supplemental Social Security Income ("SSI") on A.H.'s behalf on

November 16, 2005, contending that A.H. suffers from Attention Deficit Hyperactivity Disorder ("ADHD") and Depressive Disorder. (R. 29). The Social Security Administration denied her claim for benefits on March 10, 2006. (R. 41-44). Plaintiff timely filed a request for a hearing by an Administrative Law Judge ("ALJ") on March 28, 2006. (R. 12). ALJ Sweeney conducted a hearing on February 22, 2007, (R. 274-317), and denied Plaintiff's request for benefits on March 28, 2007. (R. 12-26). Plaintiff filed a timely request for review of the hearing decision (R. 11), but the Appeals Council denied her request for review on February 21, 2008 (R. 5-8). Plaintiff filed the instant civil action on April 21, 2008.

## II. LEGAL STANDARD

### A. Judicial Review of Disability Decisions

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). District Courts may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*. However, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id*. Accordingly, the Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." *Schwartz v. Halter*, 134 F.Supp.2d 640, 647 (E.D.Pa. 2001).

Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence consists of more than a

mere scintilla of evidence but is less than a preponderance of the evidence. *Id*. The Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. *Id*.; *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

It is also not the role of the court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). If the conclusion of the ALJ is supported by substantial evidence, this Court may not set aside the Commissioner's decision, even if it would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). This presumption applies both to findings of fact and to inferences reasonably drawn from that evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently").

     **B.**     **Disability Determination**

The Social Security Act authorizes several classes of disability benefits, including SSI. In order to qualify for SSI, a claimant must be classified as disabled under the Act and the accompanying regulations.

For a child under the age of eighteen (18) to be considered disabled and eligible for SSI under the Social Security Act, she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

A child under eighteen is only eligible for SSI benefits if (1) she is not performing substantial gainful activity; (2) she has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R § 416.924.

If the child's impairment does not medically meet a listing under 20 C.F.R. § 416.902, the examiner must determine whether the impairment functionally equals a listing.  An impairment or combination of impairments functionally equals a listed impairment if it causes a "marked" limitation in two of six areas of functioning or an "extreme" limitation in one of those six areas. 20 C.F.R § 416.926a(a).[1]  The six areas are:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

III.    ADMINISTRATIVE LAW JUDGE'S DECISION

Applying the above test, the ALJ found that A.H. was not disabled.  Although she satisfied the requirements at step one and step two, the ALJ determined that A.H. could not meet the requirements at step three because she did not have an impairment or combination of

---

[1] A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id*. at § 416.926a(e)(3)(i).

impairments that meets or medically equals in severity the criteria of any impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). The ALJ specifically noted that she considered listings such as 112.04 and 112.11, pertaining to marked impairment in age appropriate cognitive/communicative function and marked hyperactivity, but found that "the evidence does not establish that the limitations or clinical findings required by the listing are met or equaled, singly or in combination." *Id*.

Furthermore, the ALJ determined that A.H.'s impairments did not "functionally equal" one of the listings because she did not suffer "extreme" limitations in any of the six functional domains and only suffered "marked" limitations in one: her ability to interact and relate with others. (R. 21-26). The ALJ found that A.H. had "no limitation in moving about and manipulating objects" and "less than marked limitation" in all other domains. *Id*. Because plaintiff could not satisfy the third step of the children's SSI analysis, the ALJ found that A.H. was not disabled, as defined under the Social Security Act, and thus denied plaintiff's claim for child's SSI. (R. 26).

IV.     **DISCUSSION**

    A.     **The ALJ Properly Considered the Reports of A.H.'s Teachers.**

Plaintiff argues that the ALJ committed both an error of law and of fact by failing to properly consider the reports of A.H.'s teachers. According to plaintiff, the ALJ's evaluation of these reports fails because: "the ALJ did not weigh the reports by the teachers separately," and because the ALJ's statement that she assigned "appropriate weight" to the teachers' reports is "an ambiguous, amorphous term that should not be relied upon to determine entitlement to benefits." "Plaintiff's Brief and Statement of Issues in Support of Request for Review" at 11. I

5

do not find either argument persuasive in light of applicable precedent.

On January 27, 2006, Lauren Brickman, Bridget Gingrow, Katrina McCrachren and Nick Sanders completed a Teacher Questionnaire Regarding A.H.[2] (R. 101-08). In this questionnaire, A.H.'s teachers assessed her limitations in the six domains listed in 20 C.F.R. § 416.926a(b)(1) using a scale ranging from 1 (indicating no problem) to 5 (indicating a very serious problem). *Id*. Under the "acquiring and using information" domain, the teachers indicated that A.H. had an "obvious problem" (rating of 3) with two of the ten activities listed – comprehending oral instructions, comprehending math problems – and only "a slight problem" (rating of 2) with all other activities. (R. 102). In the "attending and completing tasks" domain, A.H.'s teachers found her to have an obvious problem with only one activity: "focusing long enough to finish assigned activity or task." (R.103). The teachers indicated either a slight problem or no problem with all of the other twelve activities listed in this domain. *Id*. A.H.'s teachers found her to have no problem with activities listed under the "interacting and relating with others" and "moving about and manipulating objects" domains. The teachers also found her to have a slight problem with one activity in the "caring for herself" domain – handling frustration appropriately – and no problem with any other activity. Under the "health and physical well-being" domain, the teachers indicated that plaintiff does not miss school frequently due to illness and mentioned no other health problems.

On November 9, 2006, plaintiff's eighth grade home room and science teacher, Roy Blom, also completed a "teacher questionnaire." (R. 133-40). Mr. Blom found A.H. to have no problems in the "acquiring and using information", "moving about and manipulating objects",

---

[2] Ms. Brickman appears to be a school administrator. (R. 313). The other three are listed as A.H.'s "core teachers." (R. 108).

"caring for herself", and "health and physical wellbeing" domains. *Id*. In the "attending and completing tasks domain", Mr. Blom found A.H. to have a serious or very serious problem (ratings 4 and 5) in five of the thirteen activities listed, a slight or obvious problem with seven activities, and one activity was left blank. (R. 135-36). Mr. Blom also indicated that A.H. has a serious or very serious problem with two of the activities in the "interacting and relating with others domain" and an obvious problem with two other activities; however, he indicated no problem with the majority of the activities listed.

There are also five other ADHD teacher's questionnaires which were completed at the request of A.H.'s primary physician, Dr. Ankur Sadhukhan, M.D. (R. 240-41, 258-60). These questionnaires are the oldest in the record, and were completed at some point prior to October 13, 2005. While one of the questionnaires does indicate problems in several areas, the majority indicate either no problems or only slight problems. In addition, Dr. Sadhukan himself indicated that he did not believe the questionnaires supported a finding of ADHD. (R. 150-51).

The ALJ's opinion clearly states that she considered all of the teacher's questionnaires. In addition, the ALJ specifically noted the problems indicated by Mr. Blom, Ms. Brickman *et. al.*, and one of the teachers from Dr. Sadhukhan's questionnaires. The ALJ noted, however, that despite giving these questionnaires "appropriate weight," the questionnaires did not support a finding of disability, when coupled with A.H.'s therapy records and lack of special education services.

As noted above, plaintiff alleges that the ALJ erred by failing to discuss each teacher's report separately and by indicating that she gave "appropriate weight" to the reports. Plaintiff cites no authority for the proposition that the opinion of non-medical sources must be discussed individually. Moreover, there is no requirement, statutory or otherwise, that the ALJ make an

explicit credibility finding of any lay witness. *See Bleistein v. Apfel*, 1999 WL 58655 at *3 (E.D. Pa. Jan. 27, 1999).

Similarly, plaintiff cites no authority for the proposition that the ALJ must indicate precisely the amount of weight given to each lay witness' evaluation. In fact, governing case law frequently uses the term "appropriate weight" to describe the deference given to such opinions in the record. *See, e.g.*, *Bleistein*, 1999 WL 58655 at *3 ("The record reflects that the ALJ specifically evaluated and gave appropriate weight to the testimony of [psychiatric nurse] Bowe . . . As such, the Court finds that the record reflects that the ALJ gave Ms. Bowe's testimony the adequate consideration and credit that was warranted").

Accordingly, I conclude that substantial evidence supports the ALJ's ruling that the teachers' questionnaires, viewed in the aggregate, do not indicate disability. I therefore recommend that plaintiff's request for remand as it relates to this issue be denied.

**B.    The ALJ's Analysis of the Evidentiary Record Is Incomplete.**

Plaintiff further argues that the ALJ's decision was erroneous because it failed to analyze all relevant evidence in the record when ruling on plaintiff's claim, as required by Third Circuit law. *See* "Plaintiff's Brief and Statement of Issues in Support of Request for Review" at 5 (citing *Fargnoli v. Massanari,* 247 F.3d 34 (3d Cir. 2001), 247 F.3d 34, *Walton v. Halter*, 243 F.3d 703, 710 (3d Cir. 2001), *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121-22 (3d Cir. 2000)). Specifically, plaintiff contends that the ALJ "failed to articulate how she evaluated the multiple GAF scores in the record." *Id*. I agree, and respectfully recommend remand on this issue.

The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic*

*and Statistical Manual of Mental Disorders,* (4th ed.2000). A score between 41 and 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e .g. no friends, unable to keep a job)." *Id.*

Pursuant to Social Security Administration rules, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." 66 Fed. Reg. 50746, 50764-65 (2000). The rules still note, however, that the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." *Id*. Accordingly, a GAF score constitutes medical evidence accepted and relied upon by a medical source and *must* be addressed by an ALJ in making a determination regarding a claimant's disability. *Colon v. Barnhardt*, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006)(emphasis supplied). While an ALJ "may properly accept some parts of the medical evidence and reject other parts . . . he must consider all the evidence and give some reason for discounting the evidence he rejects." *Id*. (citing *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)).

As plaintiff correctly notes, the record contains six medical assessments of A.H. using the GAF scale, four of which assign a score of fifty (50). These assessments were conducted over a period of approximately ten months by at least four different medical professionals.[3] The two oldest assessments found A.H. to have a GAF score of sixty five (65), but the four most

---

[3] On October 17, 2005, therapist Claudia Soto of the Community Services Group ("CSG") and a psychiatrist whose name cannot be determined based on his/her signature gave plaintiff a GAF score of 65. (R. 160, 183). On January 19, 2006 therapist Soto and the same psychiatrist gave A.H. a GAF score of 65. (R. 159). On January 26, 2006, Dr. Ailyn Diaz, M.D., also of CSG, gave A.H. a GAF score of 50. (R. 157, 196). A.H.'s "Plan of Care Summary," dated March 23, 2006, which appears to have been completed by "licensed psychologist/psychiatrist" Barbara Kettering, also indicates a score of 50. (R. 191). On May 5, 2006, therapist Sharon Lauriello of CSG and Dr. Diaz, gave plaintiff a GAF score of 50. (R. 212). On August 11, 2006, therapist Lauriello again scored plaintiff at 50 as part of CSG discharge paperwork. (R. 205).

recent give A.H. a score of 50.

Despite these six assessments in the record, the ALJ's opinion provides no indication as to whether she considered these scores, or reasons for discounting their significance. Defendants are correct that the ALJ's opinion does find A.H.'s ADHD and depressive disorder to be severe impairments and summarizes the resulting functional limitations, but these findings do not excuse the ALJ's failure to specifically discuss the six GAF scores.

In *Escardille v. Barnhart*, 2003 WL 21499999 (E.D. Pa. June 24, 2003), Judge Giles addressed an ALJ's failure to discuss GAF scores in reaching a decision on a claimant's disability status. As in the instant matter, the claimant's treating physician stated that the claimant possessed a GAF score of 50, indicating "a serious impairment in social and occupational functioning." *Id*. at * 6. Nevertheless, the ALJ in *Escardille* provided a summary of the treating physician's diagnoses, but did not mention the claimant's GAF score. Judge Giles held this failure to be fatal to the ALJ's ultimate determination that the claimant did not suffer from a disability because, as is the case in the instant matter, the claimant's GAF score contradicted that determination and was not discussed. "Failure to provide . . . an explanation for non-consideration or rejection of a treating psychiatrist's opinion," the court held, "is contrary to Third Circuit precedent and requires reversal or remand." *Id*. at * 6 (citing *Burnett v. Comm'r of Soc. Sec. Admin*., 220 F.3d 112 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999); *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429 (3d Cir.1999); *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981)).

Subsequent case law from this district is even more explicit that a remand is necessary when an ALJ fails to specifically discuss GAF scores. *See, e.g. Glover v. Astrue*, 2008 WL 517229, at *1 (E.D. Pa. Feb. 27, 2008)("Courts in the Eastern District of Pennsylvania have

repeatedly noted that GAF scores constitute medical evidence that is accepted and relied on by physicians, and that where an ALJ fails to explain why the scores have been discounted, a remand is necessary"), *Robleto v. Barnhart*, 2006 WL 2818431, at *8 (E.D. Pa. Sept. 28, 2006)("This Court has repeatedly held that an ALJ's failure to explain how he weighted and discounted the significance of a claimant's GAF score requires a remand for the ALJ to clarify the basis of his holding"); *Dougherty v. Barnhart*, 2006 WL 2433792, at *9-10 (E.D. Pa. Aug.21, 2006)("Because a GAF constitutes medical evidence accepted and relied upon by a medical source, it must be addressed by an ALJ in making a determination regarding a claimant's disability"); *Colon*, 424 F.Supp.2d at 813-14 ("In light of Plaintiff's total GAF score history, the ALJ was required to discuss his reasons for not even considering the two GAF scores of 50, leading up to the disability determination in this case"); *Span ex rel. R.C. v. Barnhart*, 2004 WL 1535768, at *7 (E.D. Pa. May 21, 2004)(holding, also in a child's SSI case, that a case should be remanded when the "ALJ's written opinion does not evidence that he seriously considered and weighed the importance of [GAF] scores").

In the instant matter, four GAF scores of 50 are certainly relevant in ascertaining whether A.H.'s impairments "functionally equal" one of the listings due to a marked limitation in more than one of the six domains (listed supra). For example, evidence of disability in the "attending and completing tasks" domain includes: inability to pay attention to increasingly longer presentations and discussions, inability to maintain concentration while reading textbooks, and ability to not be unduly distracted by peers or unduly distracting to them in a school or work setting. 20 C.F.R. 416.926a(h).

This Court acknowledges that the C.F.R.'s examples of limitations do not necessarily describe a marked or extreme limitation. However, given the degree of overlap between the

"serious symptoms" (listed *supra*) associated with a GAF score of 50 and the examples contained in 20 C.F.R. 416.926a(h), it is certainly possible that plaintiff's GAF score, in combination with other evidence in the record, <u>could</u> describe a marked or extreme limitation, if properly considered.  Such a finding in either of these domains would give A.H. a second marked limitation, and would lead to A.H.'s impairments functionally equaling a listing and a finding of disability.

Accordingly, I respectfully recommend that this matter be remanded so that the ALJ can discuss the GAF scores.

  **C.** **The ALJ's Analysis Granting Limited Weight to Dr. Diaz's Evaluations Is Incomplete.**

Plaintiff argues that the ALJ did not accord the proper weight to evaluations of A.H. by Dr. Ailyn Diaz, M.D.  *See* "Plaintiff's Brief and Statement of Issues in Support of Request for Review" at 7-10.  The ALJ granted Dr. Diaz's medical opinions regarding A.H's marked limitations "limited weight."  (R. 20).  Plaintiff avers that Dr. Diaz should have been given the "greatest if not controlling weight" because Dr. Diaz is a treating source, and the ALJ erred by finding otherwise.  "Plaintiff's Brief and Statement of Issues in Support of Request for Review" at 9.

Plaintiff is correct that a treating physician's opinion may be entitled to additional weight, but the treating physician is not necessarily afforded such deference in all circumstances.  As explained by the Third Circuit, "an ALJ may reject outright the opinions of a treating physician only on the basis of contradictory medical evidence, but may afford a treating physician's more or less weight depending upon the extent to which supporting explanations are provided."  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(citing *Newhouse v. Heckler*, 753

F.2d 283, 286 (3d Cir. 1985). When there is a conflict in the medical evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Id*. at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). An ALJ may not reject the treating physician's assessment due to her own "credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted).

The Third Circuit has instructed that a treating physician's opinion on the nature and severity of an impairment will be given controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record. *Fargnoli*, 247 F.3d at 43. If a treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less-than-controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In the instant matter, A.H. was under the care of Dr. Diaz from January 26, 2006, (R. 157, 196), until at least January 2007.[4] During this time period, A.H. visited Dr. Diaz at least seven times to address mental health problems. (R. 296), *see also* (R. 196- 202, 212, 212). On A.H.'s first visit, Dr. Diaz diagnosed her with ADHD and depressive disorder, and prescribed Wellbutrin to address her "depressive type symptoms," and also directed A.H. to attend weekly psychotherapy sessions with therapist Claudia Soto. *Id*. On later visits, Dr. Diaz prescribed Trazodone and Adderall, in combination with the Wellbutrin, in order to control A.H.'s ADHD and depressive disorder. Dr. Diaz also found plaintiff to have a GAF score of fifty on at least two different occasions. (R. 196, 212).

---

[4] It appears that this form was completed based on previous evaluations of plaintiff rather than a new exam conducted between February 22, 2007 and February 28, 2007.

On February 28, 2007, Dr. Diaz completed a form questionnaire at the request of plaintiff's counsel. (R. 261-262). On this questionnaire, Dr. Diaz reported that A.H. suffers from ADHD and depression, and has received "both individual psychotherapy and medical management." (R. 262). Dr. Diaz also expressed the belief that plaintiff suffers from "marked inattention," "marked impairment in age appropriate personal functioning, documented by history and medical findings," "marked deficiencies of concentration, persistence, or pace," "marked difficulty in attending or completing tasks," and "marked difficulty in interacting and relating with others."[5]

In her opinion, however, the ALJ afforded Dr. Diaz's opinion "limited weight" because it was "not consistent with medical management records showing no abnormalities" or psychiatric evaluation records. (R. 20-21). In addition, the ALJ asserted that Dr. Diaz's opinion is contradicted by the fact that A.H. is in "a regular classroom with passing grades and no psychiatric admissions or partial admissions." *Id*.

Absent from the ALJ's discussion, however, is any meaningful indication of whether she considered A.H.'s GAF scores (contained in the medical management records), as determined by Dr. Diaz. This is particularly striking in light of the fact that Dr. Diaz's score of 50 matches the score assigned by at least two other medical professionals[6] and indicates "serious impairment in social, occupational, or school functioning." Similarly, even assuming she considered Dr. Diaz's GAF scores, the ALJ failed to adequately explain how or why she discounted their significance and specifically what about the scores contained in the medical management records were

---

[5] Significantly, Dr. Diaz does not indicate whether he believes A.H. has a "marked difficulty acquiring and using information." (R. 261).

[6] See A.H.'s "Plan of Care Summary", dated March 23, 2006, (R. 191), and discharge paperwork. (R. 205).

inconsistent with the February 28, 2007 questionnaire Dr. Diaz completed.

Based upon the ALJ's failure to consider this evidence, the Court cannot conclude that the ALJ's determination is supported by substantial evidence. As stated above, although the ALJ "may properly accept some parts of the medical evidence and reject other parts ... he must consider all the evidence and give some reason for discounting the evidence he rejects." *Adorno*, 40 F.3d at 48. Here, the ALJ failed to even mention Dr. Diaz's finding that A.H. has a GAF score of 50, and the written opinion does not evidence that the ALJ seriously considered and weighed the importance of these scores. Therefore, the Court cannot conclude that the ALJ's determination is supported by substantial evidence. I therefore suggest that remand is appropriate.[7]

In sum, I make the following:

---

[7] Plaintiff makes two additional arguments: (1) the ALJ's evaluation of whether A.H.'s impairments equal listing 112.04 is not supported by substantial evidence, and (2) the ALJ's ruling that A.H.'s impairments do not functionally equal a listing is not supported by substantial evidence because A.H. should have been found to have a marked limitation in the "attending and completing tasks domain." Addressing these arguments, at present, would require the Court to consider A.H.'s GAF scores and the medical opinions of Dr. Diaz, even though I have concluded that the ALJ's analysis of this evidence is incomplete, and I have therefore recommended remand. As stated above, it is not the role of the court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g.*, *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Therefore, it would be inappropriate to address either of these arguments until the basis for the ALJ's ruling is clarified through remand.

## RECOMMENDATION

AND NOW, this ____18TH____ day of February, 2009, it is RESPECTFULLY RECOMMENDED that the instant matter be remanded to the Administrative Law Judge for further proceedings consistent with this Report and Recommendation.

**BY THE COURT:**

**/s/ Lynne A. Sitarski**
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**